# Daniel *et al. v.* State.

*Indictment for Fraudulent Packing of Cotton.*

1. *Fraudulent packing of cotton; what not necessary to constitute offence denounced by section 4398 of Code.*—To constitute the statutory offence of fraudulently packing or baling cotton (Code, § 4398), it is not essential that the sand or other worthless foreign substance, fraudulently baled or packed with the cotton, should be put into the interior of the bale and concealed by surrounding or plating with clean cotton, so as not to be detected by the ordinary modes of sampling; nor does it matter whether such worthless foreign substance is put in the cotton while in the gin-house, or at the press while the cotton is being packed in bales.

2. *Offence, how must be charged.*—Where a statute creating an offence, declares that it may be committed by certain specified acts or means, or by other generic acts or means which are not described, an indictment under the statute for an act other than those particularized, or charging such acts in the alternative with the acts specified in the statute, must charge the acts which the statute does not specifically define, in unambiguous words belonging to the plain and proper language of the country, and not in slang words

[Daniel v. State.]

or vulgarisms, or words used in a technical sense in some peculiar employment or business.

3. "*Sand-packing*," *use of term in indictment, does not render it ambiguous.*—In view of the general concern of the people of the State in raising cotton, preparing it for market, and selling and purchasing it, the words "*sand-packing*" have become so generally understood among the people, that they can not be said to be ambiguous or merely technical; and the use of these words in an indictment for the false packing of cotton, will not render it ambiguous, or insufficient.

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. HENRY D. CLAYTON.

The appellants were convicted under an indictment which charged that they " did fraudulently pack or bale one bale of lint cotton, the property of Hester Ann Jones, by plating or otherwise, to-wit, by *sand-packing*," &c.

On the trial, it was shown that the defendants were the owners of a public gin, which they ran for toll in Barbour county, in this State. Hester Jones testified " that in the fall of 1877, she carried seed-cotton to said gin, which was not 'storm cotton,' and was good cotton, and delivered it to be ginned and baled, and paid the toll on the same; that sometime thereafter, she sent one of her sons to said gin and received a bale of cotton which had been ginned and packed at said gin, and which was delivered to her son by one of the defendants, as her cotton; that she carried the bale thus received to Troy, where it was sampled by one Jackson, a cotton-buyer, and that the sample contained several ounces of sand; that the sand fell out of said sample as it was drawn out, and was coarse sand; that the sample contained so much sand that the cotton was not worth more than five cents a pound, when but for the sand it would have been worth nine cents a pound."

Jackson testified that on account of the quantity of sand in the sample, he had the bale of cotton cut open and the sand beaten out, and that the sand was all through the bale, as it was in the sample. He further testified that in his opinion there were seventy pounds of sand in the bale.

The defendants offered the testimony of a number of witnesses tending to show that during the time the cotton of Hester Jones was at the gin, there were a great many lots of what was known as "storm cotton" in the gin-house, brought there by various persons, and that when the bale of cotton was delivered to the son of Hester Jones, there were five or six other bales lying near said bale, and that there were no marks to designate which was the bale of Hester Jones.

[Daniel v. State.]

The appellant introduced two witnesses, who testified that they aided in ginning and packing the identical cotton sent to the gin-house by Hester Jones, and that no sand was put in said bale,. or in the cotton before it was baled. The defendants introduced witnesses who testified that there were more than two storms in the neighborhood in which the cotton was raised, and that the land on which the Jones bale was raised was poor and sandy, and the stalks did not average more than eighteen inches in height; that storm cotton contained a great deal of sand, which was beaten by the rain into the cotton open on the lower limbs, and such as had fallen out on the ground; and that many bales of storm cotton were ginned and baled during the season of 1877, which contained more than one hundred pounds of sand after being baled.

The court charged the jury "that if the defendants put the sand into the lint cotton, either in the lint-room, or while being carried to or put in the screw-box, while being baled or packed, for the purpose of defrauding Hester Ann Jones, or any one else who might purchase the cotton, the defendants were guilty as charged."

This charge was excepted to by the defendants, who then requested the court to give the following charges, which were in writing: "2. If the evidence shows that the bale of cotton contained sand about alike in quantity all through the bale, from the surface to the edge of the bale, then said cotton was not fraudulently sand-packed or baled." 3. "That in order to constitute the offence of fraudulently sand-packing or baling cotton, the proof must show conclusively that the sand was put in the bale in such a way as to convince the jury beyond reasonable doubt that the purpose of the defendants was to conceal the sand from being seen or detected so near the outside of the bale, as it could not be reached by the ordinary test of sampling." 3½. "That unless the proof satisfied the jury that the sand was purposely put so deep in the bale that it could not be seen or detected by sampling in the ordinary way, then the bale of cotton was not fraudulently packed or baled." The court refused to give either of these charges, and defendants excepted.

The charge given, and the refusals to charge as requested, are now assigned as error.

D. M. SEALS, for appellants.—The indictment is defective, failing to describe with legal certainty how the fraudulent baling was done. It alleges the offence in the language of

[Daniel v. State.]

the statute "by plating or otherwise," and adds, to-wit, by "sand-packing." How "sand-packed?" What is the meaning of *sand-packing?* The charge is too vague and indefinite. The charges asked should have been given. Their refusal certainly ignored the main element which constitutes the gist of the offence—namely, a purpose or intent of the defendants to pack or bale the cotton fraudulently. It must be done with an *intent to conceal from, and deceive a purchaser* or *dealer* as to the quantity and condition of the cotton in the bale; the particular manner of baling the cotton, the particular manner of putting, placing or arranging the cotton in the bale, so that no one could detect or observe the deception, except by something more than the ordinary means and tests employed in the market by dealers and purchasers, must exist to constitute the fraudulent baling of cotton, within the meaning of the statute.

H. C. TOMPKINS, Attorney-General, *contra.*—There can be no doubt as to the meaning of the phrase, "sand-packing." It means *packed with sand;* and there can be no doubt that the defendants were clearly informed of what was charged. The charge given by the court is clearly correct. It asserts that the statute is violated, if the mixing was done in either of the places, if done with the fraudulent intent; and certainly to hold otherwise would be to so limit the operation of the law as to entirely defeat its purposes. The *gravamen* of the crime is the packing with the fraudulent intent. The charges refused invaded the province of the jury; for while it is true that the circumstance, that the sand was evenly distributed throughout the bale, might be a circumstance which would tend to repel the presumption of fraudulent intent, the assertion as matter of law that such a circumstance repelled the presumption of fraud, clearly infringes on the right of the jury to determine what the facts prove.

MANNING, J.—The statute (§ 4398 of the Code of 1876) denouncing a penalty against "any person who fraudulently packs or bales any cotton by plating, or otherwise," is undoubtedly violated when persons who gin cotton for toll, with intent to defraud the owner of seed-cotton sent to them to be ginned or packed, or to defraud a purchaser thereof, mix sand or other worthless foreign substances with the cotton when ginned, in the bales into which it is packed. It is not necessary in order to make out the the offence, to show, that the sand is put into the interior of the bale and

concealed by surrounding or plating it with clean cotton; nor does it matter whether the sand is put into the cotton while in the gin-house, or being carried out to the press, or at the press when packed or about to be packed into bales. The charges of the circuit judge are not inconsistent with these views, and were not erroneous; nor did he err in refusing to give to the jury the charges 2, 3 and 3½ that were asked on behalf of defendants.

About the indictment, we have had some difficulty. It charges that appellants " did fraudulently pack or bale one bale of lint cotton, the property of Hester Ann Jones, by plating or otherwise, to wit, *by sand-packing*," &c.

When a statute creating an offence declares that it may be committed, by certain specified acts or means, " or otherwise," the acts otherwise or different from those specified and which are to be put in evidence, must be so described or alleged in the indictment, that the court shall be able to see whether or not they constitute the offence.—*Danner v. The State*, 54 Ala. 127. If in the latter of such alternative averments, the acts or means by which the offence is supposed to have been committed, are not mentioned,—it may turn out that the grand jury, in finding the indictment, and the petit jury, in their verdict sustaining it, have imputed to certain acts a character of criminality which does not belong to them in the eyes of the law, and upon which the judge would not be justified in passing sentence against the accused.

It follows, of course, that in alleging the acts assumed to be criminal, they should be set forth in unambiguous words, understood by court and jury and by people generally; not in slang words or vulgarisms, or words used in a technical sense in some peculiar employment or business, but in words belonging to the plain and proper language of the community. We have hesitated over the question whether the expression " sand-packing" is not of a technical character, and as such not generally known in popular use. But considering how generally the people of this State are concerned in the raising of cotton, and in preparing it for market and in the sale and purchase of it—we think the meaning of "sand-packing" has become so generally understood that we can not say the indictment is bad for ambiguity. It would have been better to have alleged that the fraudulent packing of the cotton was done by intermixing or putting sand with the cotton in the bale, with the intent, &c.

Solicitors should use more thought and care in preparing

the brief indictments which are authorized by our statutes.
Let the judgment of the Circuit Court be affirmed.